## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **STEVEN CAMPBELL** | **CIVIL ACTION** |
| **versus** | **NO. 13-4843** |
| **ROBERT TANNER, WARDEN** | **SECTION: "E" (3)** |

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Steven Campbell, is a state prisoner incarcerated at the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.  On November 15, 2006, he pleaded guilty under Louisiana law to the following crimes:  possession of a firearm by a convicted felon ("Count I"); possession of over twenty-eight grams of cocaine ("Count II"); and creation or operation of a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance ("Count III").[1]  On December 4, 2006, he was sentenced as follows:  on Count I, to a term of ten years

---

[1] State Rec., Vol. I of VII, transcript of November 15, 2006; State Rec., Vol. I of VII, minute entry dated November 15, 2006; State Rec., Vol. I of VII, guilty plea form.

imprisonment without benefit of probation, parole, or suspension of sentence; on Count II, to a term of fifteen years imprisonment, with the first five years to be served without benefit of probation, parole, or suspension of sentence; and on Count III, to a term of ten years imprisonment.  It was ordered that those sentences be served concurrently.  On that same date, he pleaded guilty to being a second offender and was resentenced as such on Count II to a term of fifteen years imprisonment, with the first five years to be served without benefit of parole and the entire term to be served without benefit of probation or suspension of sentence.[2] After he was granted an out-of-time appeal, the Louisiana Fifth Circuit Court of Appeal affirmed his convictions and sentences.[3]  The Louisiana Supreme Court then denied his related writ application on February 12, 2010.[4]

---

[2]  State Rec., Vol. I of VII, transcript of December 4, 2006; State Rec., Vol. I of VII, minute entry dated December 4, 2006; State Rec., Vol. I of VII, guilty plea form.

[3]  State v. Campbell, 15 So.3d 1076 (La. App. 5th Cir. 2009); State Rec., Vol. II of VII.  However, the Court of Appeal amended in part petitioner's enhanced sentence on Count II, holding:

> [W]e find that defendant's enhanced sentence is illegal and indeterminate because the trial court ordered it to run concurrent with "any parole violation or probation violations (defendant) may have, or revocations." Only the judge who revokes the probation can order the sentence on a probation revocation to run either concurrently or consecutively with the sentence of a later conviction.  This Court has the authority to correct an illegal sentence at any time.  Pursuant to that authority, we vacate that portion of the sentence.
> 
> We further note that the portion of defendant's enhanced sentence that states it is to run concurrent with any parole violations is indeterminate and, therefore, in violation of La.C.Cr.P. art. 879.  While there is no prohibition against the trial judge ordering a sentence to run concurrent with a parole revocation, the sentence is indeterminate because defendant's parole status is unclear.

Id. at 1081 (footnotes omitted).

[4] State v. Campbell, 27 So.3d 842 (La. 2010); State Rec., Vol. II of VII.

After petitioner's repeated efforts to obtain post-conviction relief in the state courts proved unsuccessful, he filed the instant federal *habeas corpus* application.[5]  The state concedes that petitioner's application is timely but argues that his claims should be denied on the merits.[6]  Petitioner has filed a reply to the state's response.[7]

I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant

---

[5] Rec. Doc. 4.

[6] Rec. Doc. 14.

[7] Rec. Doc. 15.

-  3  -

shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

    As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

    Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

    Regarding the "unreasonable application" clause, the United States Supreme Court has held:  "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case."  White v. Woodall, 134 S. Ct. 1697, 1706 (2014).  However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.  Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision.  AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted).  The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694.  Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so.  As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

- 5 -

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from

using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state

courts.").

The Supreme Court has expressly warned that although "some federal judges find [28

U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law

and apply the strictly deferential standards of review mandated therein.  White v. Woodall, 134 S.

Ct. 1697, 1701 (2014).

## II.  Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeals noted:

> Because of the guilty pleas and the lack of a trial, the facts
> contained in the record are minimal.  It appears from the hearing on
> the motions to suppress and statements made at the time of the plea
> that defendant's arrest and subsequent charges were the result of an
> investigation into complaints by neighbors that suspicious activity
> suggestive of narcotic trafficking was occurring in a nearby storage
> facility.  According to the statements made by the State at the time
> the guilty plea was accepted by the trial court, the defendant
> possessed a .44 handgun and 172.57 grams of cocaine and had
> created and was operating a laboratory in which he manufactured
> cocaine.[8]

## III.  Petitioner's Claims

### A.  Firearm Conviction is Based on an Invalid Predicate Conviction

In Orleans Parish Criminal District Court number 395-843, petitioner was charged

with possession with intent to distribute cocaine.  On March 13, 2000, while represented by counsel,

---

[8] State v. Campbell, 15 So.3d 1076, 1078 (La. App. 5th Cir. 2009); State Rec., Vol. II of VII.

he pleaded guilty to that charge; however, sentencing was deferred, and he was referred to "drug court" and fined.[9]  On May 2, 2002, his probation was terminated satisfactorily, and the criminal case was closed.[10]  Many years later, after the expiration of the period for seeking direct or collateral review, petitioner filed a motion to reconsider sentence on January 29, 2009, and a motion to correct an illegal sentence on December 21, 2010.[11]  On July 15, 2011, a different Orleans Parish Criminal Court judge allowed petitioner to withdraw the guilty plea in case number 395-843.[12]

**In the interim**, on November 15, 2006, petitioner pleaded guilty to the instant offense of possession of a firearm by a convicted felon based on the predicate conviction in case number 395-843.  He now argues that  his conviction in  case number 395-843 was invalid and, therefore, could not legally be used as a predicate offense with respect to his instant firearm conviction.  In the post-conviction proceedings, the state district court rejected that claim, holding:

> Petitioner has filed a fourth Application for Post-Conviction Relief, alleging that the predicate felony conviction used in his conviction for count #1, LSA-R.S. 14:95.1, relative to felon in possession of a firearm, has recently been vacated and set aside in Orleans Parish.
>
> As the State surmises in its response, petitioner's claim has no merit.  At the time of petitioner's arrest in this case, he was in fact a convicted felon and was not legally allowed to possess a firearm.  The fact that he had a guilty plea set-aside on July 15, 2011, is irrelevant, as he was still a convicted felon and precluded from possessing a firearm on the date of this charged offense.  As the Louisiana Supreme Court has recognized,

---

[9] State Rec., Vol. III of VII, minute entry dated March 13, 2000 (Case number 395-843).

[10] State Rec., Vol. III of VII, minute entry dated May 2, 2002 (Case number 395-843).

[11] State Rec., Vol. III of VII, Docket Master (Case number 395-843).

[12] State Rec., Vol. III of VII, transcript of July 15, 2011 (Case number 395-843).

LSA-R.S. 14:95.1 is also directed at "... any person who has been convicted of ..." certain offenses. As in the federal statute: "No modifier is present, and nothing suggests any restriction on the scope of the term 'convicted'." 445 U.S. 60, 100 S.Ct. 918, 63 L.Ed.2d 206. One classified as a convicted felon loses his right to bear arms. State v. Clement, 368 So.2d 1037 (La. 1979). Until that status is changed and the disability removed, a convicted felon can possess a gun only if: (1) ten years have passed; or (2) a special permit is granted. LSA-R.S. 14:95.1C(1) and (2). (Compare 18 U.S.C. § 925(c).) The Louisiana statute is less restrictive than 18 U.S.C. App. § 1202, which applies to all felonies, and does not provide for a prescriptive period. The Louisiana legislature, like Congress, "... could rationally conclude that any felony conviction, even a [sic] allegedly invalid one, is a sufficient basis on which to prohibit the possession of a firearm." 445 U.S. 66, 100 S.Ct. 921, 63 L.Ed.2d 210. LSA-R.S. 14:95.1 represents a reasonable exercise of police power.

> "Its purpose is to limit the possession of firearms by persons who, by their past commission of certain specified serious felonies, have demonstrated a dangerous disregard for the law and present a potential threat of further future criminal activity." State v. Amos, 343 So.2d 166 at 168 (La. 1977).

That threat is not lessened by a technical defect in the prior felony conviction.

State v. Williams, 392 So.2d 448, 450 (La. 1980).

The court finds no merit to petitioner's claim, and no basis for relief.[13]

---

[13] State Rec., Vol. IV of VII, Order dated August 27, 2012.

The Louisiana Fifth Circuit Court of Appeal then denied petitioner's related writ application, holding:

> In its August 27, 2012 Order, the district court denied relator's fourth application for post-conviction relief. In his application, relator argued that his sentence for possession of a firearm by a convicted felon, in violation of LSA-R.S. 14:95.1, is invalid, because his prior conviction in Orleans Parish that provided the basis for that conviction was subsequently set aside on July 15, 2011. The district court found no merit and no basis for relief on relator's claim, finding that, at the time relator was arrested, he was a convicted felon and was not legally allowed to possess a firearm. The court further found that the fact that relator's guilty plea was set-aside, on July 15, 2011, was irrelevant because he was still a convicted felon and precluded from possessing a firearm on the date of this charged offense (citing LSA-R.S. 14:95.1).
>
> Based on the showing made, we find no error in the district court's August 27, 2012 Order. Accordingly, this writ application is denied.[14]

Without assigning reasons, the Louisiana Supreme Court likewise denied relief.[15]

As noted by the state courts, at the time petitioner pleaded guilty in 2006 to possession of a firearm by a convicted felon, he in fact stood convicted of the felony of possession with intent to distribute cocaine in case number 395-843. Therefore, for the reasons explained by the state courts, that conviction clearly could be used for the purposes of the instant firearm conviction. *Even if* petitioner had a basis for attacking the validity of that predicate conviction, the conviction could still be used as a predicate offense *until such time as it was in fact invalidated.*

---

[14] State v. Campbell, No. 12-KH-735 (La. App. 5th Cir. Nov. 5, 2012); State Rec., Vol. IV of VII.

[15] State *ex rel.* Campbell v. State, 118 So.3d 389 (La. 2013) (No. 2012-KH-2725); State Rec., Vol. IV of VII.

See, e.g., State v. Fayard, 541 So.2d 832, 833 n.1 (La. 1989) ("[A] prior conviction may be the predicate for a violation of La.R.S. 14:95.1 even if that prior conviction was subject to collateral attack, but not yet vacated, at the time the violation of La.R.S. 14:95.1 occurred.").  Accordingly, *state* law clearly permitted use of the predicate conviction to support petitioner's instant conviction for possession of a firearm by a convicted felon.  Further, because he has not demonstrated that the state court decision denying relief on this claim was in any way contrary to, or involved an unreasonable application of, clearly established *federal* law, this Court should deny *habeas corpus* federal relief under the deferential standards of review mandated by 28 U.S.C. § 2254(d)(2).

To the extent that petitioner is also arguing that his rights were violated as a result of the fact that the *same* predicate conviction was used for *two* purposes, i.e. both as a basis for his conviction of possession of a firearm by a convicted felon *and* as a basis to adjudicate him as an habitual offender, that argument is likewise meritless.  It is true that, under Louisiana law, the same predicate conviction may *not* be used to serve both as a basis of a firearm conviction and as the basis to enhance that *same* firearm conviction in a habitual offender proceeding.  State v. Baker, 970 So.2d 948 (La. 2007) ("[A] sentence imposed under La. R.S. 14:95.1 may be enhanced under the habitual offender law*, as long as* the prior felony conviction used as an element in the firearms conviction is not also used as a prior felony conviction in the habitual offender bill of information." (emphasis added)).  However, that did not occur in the instant case.  Here, petitioner was adjudicated as an habitual offender with respect to *only* Count II, i.e. the conviction for possession of over twenty-eight grams of cocaine; he was *not* adjudicated as an habitual offender with respect to the *firearm conviction*.   The foregoing limitation does not apply where, as here, the sentence being

enhanced in the habitual offender proceeding relates to a *conviction other than the firearm conviction* – in that situation, there is no impermissible double enhancement.  See, e.g., State v. Anderson, 842 So.2d 1222, 1230-31 (La. App. 2nd Cir. 2003) (finding that the same prior drug conviction could be used as a predicate offense for both a firearm charge and an habitual offender enhancement of the sentences for two new drug convictions).  Therefore, again, *state* law was not violated, and petitioner has not shown that the state court decision denying him relief with respect to this claim was contrary to, or involved an unreasonable application of, clearly established *federal* law.  Accordingly, this claim should also be denied.

### B.  Petitioner Received Ineffective Assistance of Counsel

Petitioner next claims that he received ineffective assistance of counsel.  The United States Supreme Court established a two-prong test for evaluating such claims.  Specifically, a petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 697 (1984).  The petitioner bears the burden of proof and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that the petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth

Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).   "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).   Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  The petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Matheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

        The appropriate standard for determining prejudice varies slightly depending on whether a petitioner is challenging the actions of trial or appellate counsel.  In order to satisfy the prejudice prong of an ineffective assistance of trial counsel claim in a case involving a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also James v. Cain, 56 F.3d 662, 667 (5th Cir. 1995).  On the other hand, to prove prejudice with respect to a claim that *appellate* counsel was ineffective, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation.  Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286 (2000).  Therefore, the petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error.  Briseno, 274 F.3d at 210.

- 12 -

In the instant case, petitioner argues that he received ineffective assistance of counsel in several respects.  After his claims were denied by the state district court in the 2011 post-conviction proceedings, he sought review by the Louisiana Fifth Circuit Court of Appeal.  That court likewise denied relief, holding:

> To establish a claim of ineffective assistance of counsel, a defendant must demonstrate:  1) that his attorney's performance fell below an objective standard of reasonableness under prevailing professional norms; and 2) that his counsel's errors or omissions resulted in prejudice so great as to deprive the defendant of a fair trial or a trial whose result is reliable. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. LaCaze, 99-0584 (La. 1/25/02), 824 So.2d 1063, cert. denied, 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed.2d 110 (2002).  It is unnecessary to address the issues of both counsel's performance and prejudice if relator makes an inadequate showing on one of the components. State v. Serigny, 610 So.2d 857, 860 (La. App. 1 Cir. 1992), writ denied, 614 So.2d 1263 (La. 1993).   Relator's reliance on conclusory allegations is insufficient to establish ineffectiveness. State v. Williams, 613 So.2d 252, 257 (La. App. 1 Cir. 1992). See also State v. Robinson, 01-1305 (La. App. 4 Cir. 4/17/02), 820 So.2d 571, 583, writ denied, 02-1640 (La. 5/30/03), 845 So.2d 1068 (vague and unsupported allegation insufficient).
>
> In reviewing claims of ineffective assistance of counsel on direct appeal, the Supreme Court of the United States has observed that appellate counsel need not advance every argument, regardless of merit, urged by the defendant. Jones v. Barnes, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).  The Court gives great deference to professional appellate strategy and applauds counsel for "winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues." Id. at 751-52.  When a claim of ineffective assistance is premised on counsel's failure to raise an issue on appeal, the prejudice prong first requires a showing that the appellate court would have afforded relief on appeal. United States v. Phillips, 210 F.3d 345, 350 (5th Cir. 2000).
>
> Here, we note that appellate counsel raised seven assignments of error, thus providing relator with a thorough and considered review of his case.  Relator's application fails to show that his appellate attorney's performance fell below an objective standard of

- 13 -

reasonableness under prevailing professional norms.  Consequently, we find relator fails to bear his burden of proof.

Further, regarding the specific grounds relator raises, we find that relator fails to show that he would have been afforded relief on appeal.   Hearsay evidence is permitted in a motion to suppress hearing.  State v. Turner, 08-1188 (La. App. 5 Cir. 5/12/09), 13 So.2d 695, writ denied State ex rel. Turner v. State, 2009-2100 (La. 8/18/10), 42 So.3d 400.

Further, relator has not shown that, in and of itself, trial counsel's failure to raise a Crosby plea constituted ineffective assistance of counsel, and thus has not shown ineffective assistance of appellate counsel for failing to raise this issue on appeal.  As in other instances of a qualified guilty plea, the trial court has very great and virtually unreviewable discretion to reject rather than accept a guilty plea conditioned upon reservation of appellate review of pre-plea assignments of non-jurisdictional error.  State v. Crosby, supra. In other words, the right of the defendant to condition his plea upon the reservation for appellate review of pre-plea errors is subject to acceptance by the trial court.  State v. Gillis, 07-1909 (La. App. 1 Cir. 3/26/08), 985 So.2d 745.  Accordingly, counsel's request for a Crosby reservation, if made, was not guaranteed to be granted.

Relator further argues that trial counsel was ineffective during plea negotiations in various respects.   In its ruling, the trial court stated:

> [W]here the petitioner pled guilty, he must prove that there is not a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.  Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).  The voluntariness of the guilty plea depends on whether counsel's advice was within the wide-range of competence demanded of attorneys in criminal cases.  State ex rel. Graffagnino v. King, 436 So.2d 559 (La. 1983).
>
> Both a Waiver of Constitutional Rights Plea of Guilty form, and a Waiver of Rights Plea of Guilty Multiple Offender form are in the record, signed by petitioner, counsel, and the court.  The Boykin and sentencing colloquy is also in the record, and reveals that the petitioner was well advised of his sentence as

a multiple offender.  Thus, the record establishes a
voluntary guilty plea.

In all post-conviction proceedings, the burden
of proof is on the petitioner.  LSA-C.Cr.P. art. 930.2.
The petitioner fails to meet this burden.  He has
proven neither prong of the <u>Strickland</u> test.  There is
no evidence in the record suggesting prejudice or
deficient performance by his attorney.  On the
contrary, the record also establishes that counsel
performed with a high degree of effectiveness.  Due
to counsel's efforts, the petitioner received a sentence
well below the maximum allowed by law.
Significantly, the petitioner does not assert that he
would have insisted on going to trial.

Regarding the fifth issue, relator's current application, as well
as the application and supplement filed thereto in 2010, argued that
relator's guilty plea to the multiple bill was unknowing and
involuntary because the predicate offense in Orleans Parish was
invalid because relator was not advised, in the Orleans Parish
proceeding, of his right to a jury trial.

Again, on the merits, relator's claim fails.  When relator first
raised this issue in the 2010 application, it was denied on the merits
for lack of proof.  Relator now supplies, in the present application,
the "evidence" he claims supports his claim.  However, we disagree.
The "new" information submitted in support of this claim (the court
reporter's affidavit, the certified minute entry from March 13, 2000
and the appellate opinion pertaining to Kevin Craft) does not
establish that relator's guilty plea to his predicate offense in Orleans
Parish was invalid.  Accordingly, this claim fails on the merits, and
we find no error in the trial court's ruling denying it.[16]

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[17]

---

[16]  <u>State v. Campbell</u>, No. 11-KH-565, at pp. 3-6 (La. App. 5th Cir. July 1, 2011) (footnote
omitted); State Rec., Vol. III of VII.

[17]  <u>State v. Campbell</u>, 85 So.3d 85 (La. 2012) (No. 2011-KP-1717); State Rec., Vol. III of VII.

- 15 -

Because petitioner's ineffective assistance of counsel claims were rejected by the state courts on the merits,[18] and because such claims present mixed questions of law and fact, this Court must defer to the state court decision rejecting petitioner's claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.   For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  Yarborough

---

[18]   As is clear from the language quoted herein, the state courts rejected petitioner's claims on the merits.  However, out of an abundance of caution, the undersigned notes that the state courts also alternatively denied the claims on procedural grounds.  Nevertheless, in its response in this federal proceeding, the state argues only that the claims should be denied on the merits.  The state has not therefore argued that the claims are procedurally barred, and the undersigned declines to raise that affirmative defense *sua sponte*.  Further, it is clear that a federal *habeas* court a federal court need not decide whether a claim is procedurally barred if the claim clearly fails on the merits.  Glover v. Hargett, 56 F.3d 682, 684 (5th Cir. 1995); Wiley v. Puckett, 969 F.2d 86, 104 (5th Cir. 1992); Lande v. Cooper, Civ. Action No. 11-3130, 2013 WL 5781691, at *26 n. 68 (E.D. La. Oct. 25, 2013); Corzo v. Murphy, Civ. Action No. 07-7409, 2008 WL 3347394, at *1 n.5 (E.D. La. July 30, 2008); Lee v. Cain, Civ. Action No. 06-9669, 2007 WL 2751210, at *9 (E.D. La. Sept. 18, 2007).

v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by* Strickland *and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied* Strickland*'s deferential standard.*

- 17 -

Id. at 105 (citations omitted; emphasis added).  For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claims.

Here, petitioner argues that his trial counsel was ineffective for (1) failing to object to hearsay at the suppression hearing, (2) allowing petitioner to enter unqualified guilty pleas rather than conditional pleas pursuant to State v. Crosby, 338 So.2d 584 (La. 1976), and (3) allowing him to enter guilty pleas despite a defect in his predicate conviction.

As an initial matter, the undersigned first notes that these claims fail for a simple and basic reason.  As already explained, because petitioner pleaded guilty, he can prevail on an ineffective assistance of trial counsel claim only if he shows that "there is a *reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial*."  Hill v. Lockhart, 474 U.S. 52, 59 (1985) (emphasis added); see also James v. Cain, 56 F.3d 662, 667 (5th Cir. 1995).  In the instant case, petitioner fails even to expressly allege that he would not have pleaded guilty but for his counsel's purported failures.  That defect is alone fatal to his claims that his trial counsel was ineffective. See, e.g., Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998) (noting that such a claim would "necessarily fail without such an allegation"); Patton v. Stephens, No. 3:13-CV-2333, 2014 WL 6809175, at *5 (N.D. Tex. Dec. 3, 2014) ("[T]he failure to allege that, but for the claimed ineffectiveness, the petitioner would have not pleaded guilty, and instead would have insisted on going to trial, is, in most cases, fatal to such a claim.").[19]

_____

[19]  Further, in any event, the Court finds that there is no reasonable probability that petitioner would have insisted on going to trial for the following reasons.  By agreeing to plead guilty and avoiding trial, he was able to secure substantial concessions from the state.  If petitioner were

In any event, even aside from the foregoing defect in petitioner's ineffective assistance of trial counsel claims, the claims also fail for the following additional reasons.

Petitioner's first claim is that his trial counsel was ineffective for failing to object to Detective John Pacaccio's testimony at the suppression hearing concerning the out-of-court statements of Mary Kellog and Brian Roberts identifying petitioner from photographic lineups. That claim fails for two reasons. First, it must be noted that any contention that counsel failed to raise such an objection concerning *Kellog's* statement is incorrect. Counsel did in fact object to that testimony on hearsay grounds; the objection was simply overruled.[20] Second, in any event, as the state court correctly noted in its opinion, there was no basis for an objection because Louisiana law provides that "hearsay rules do not apply in hearings on motions to suppress evidence." State v. Shirley, 10 So.3d 224, 228 (La. 2009); accord State v. Bentley, 116 So.3d 891, 896 (La. App. 4th Cir. 2013) ("[H]earsay testimony is admissible in a suppression hearing."), writ denied, 130 So.3d 341 (La. 2014). Therefore, any objection on hearsay grounds would be meritless, and it is clear that the "[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite." Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994); accord United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a

---

convicted at trial, he faced up to *sixty years* in prison – even if he were allowed to serve his three sentences concurrently. However, in return for his guilty pleas, he reduced his sentencing exposure to a total of only *fifteen years*, a reduction of 75%, which was the minimum sentence he could have received as a second offender. In light of the abundant evidence against him, it is unlikely that he would have refused that very favorable plea agreement.

[20]   State Rec., Vol. I of VII, transcript of September 5, 2006, p. 12.

successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

Out of an abundance of caution, the undersigned notes that petitioner also appears to be arguing that counsel was ineffective for failing to object to those same statements on the ground that they violated his Confrontation Clause rights under Crawford v. Washington, 541 U.S. 36 (2004), and Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009).  If so, that argument fares no better.  Crawford and Melendez-Diaz did not involve pretrial suppression hearings, and there is no Supreme Court precedent holding that the Confrontation Clause applies in pretrial suppression hearings[21] or that counsel can be ineffective for failing to raise a Confrontation Clause objection in

---

[21] As the United States Tenth Circuit Court of Appeals has noted: "There is no binding precedent from the Supreme Court or this court concerning whether Crawford applies to pretrial suppression hearings."  United States v. Garcia, 324 Fed. App'x 705, 708 (10th Cir. 2009).  The Tenth Circuit went on to note:

> To the extent that we can divine clues from our case law concerning the resolution of this issue, they do not benefit Mr. Garcia.  See United States v. Miramonted, 365 F.3d 902, 904 (10th Cir. 2004) (decided after Crawford, but without citing it, holding that "hearsay [testimony] is admissible at a hearing on a motion to suppress and should have been considered by the district court"); cf. United States v. Bustamante, 454 F.3d 1200, 1202 (10th Cir. 2006) ("Crawford concerned the use of testimonial hearsay statements *at trial* and does not speak to whether it is appropriate for a court to rely on hearsay statements at a sentencing hearing." (emphasis added)).
>
> Moreover, apparently few federal courts have squarely addressed the issue.  See, e.g., United States v. Morgan, 505 F.3d 332, 338 (5th Cir. 2007) ("[T]he Fifth Circuit has not decided whether Crawford applies to pretrial proceedings and determinations...."); Francischelli v. Potter, No. 1:03-CV-6091-ENV, 2007 WL 776760, at * 10 (E.D.N.Y. Mar. 12, 2007) ("[T]he Court can find no authority applying Crawford to a suppression hearing.").  And Mr. Garcia can find little solace in the rulings of those courts that have definitively spoken.  See, e.g., Washburn v. United States, No. 3:05-CV-774 RM, 2006 WL 3715393, at *4 (N.D. Ind. Dec. 14, 2006) (noting that Crawford's applicability to pretrial suppression hearings is "an issue of first impression" in the Seventh Circuit and finding that defendant's "reliance

such a hearing. As a result, there is no basis for finding that the state court decision denying the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As the United States Supreme Court has explained, where its "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted)). Cf. United States ex rel. Thomas v. Gaetz, 633 F. Supp. 2d 645, 657 (N.D. Ill. 2009) ("Because the Supreme Court has not held that Crawford applies to pre-trial hearings, it cannot be said that the appellate court's decision was contrary to, or an unreasonable applicable of clearly established federal law.").

Petitioner's next claim is his trial counsel was ineffective for allowing him to enter unqualified guilty pleas rather than Crosby pleas. Pursuant to State v. Crosby, 338 So.2d 584 (La. 1976), a Louisiana defendant is allowed appellate review of pretrial rulings if (1) he properly reserves that right at the time and at the entry of the guilty plea and (2) his plea is conditioned on his reservation of that right. However, "a defendant will ... waive his right to review of a non-jurisdictional pre-plea trial ruling unless, at the time of the plea, he expressly stipulates that he does not waive his right to review of it, the normal consequence of a guilty plea." Id. at 591.

---

on Crawford is misplaced"); United States v. Thompson, No. 4:05CR00161 HEA(AGF), 2005 WL 3050634, at *6 (E.D. Mo. Nov. 14, 2005) (rejecting Crawford's alleged applicability to a pretrial suppression hearing, noting "Crawford does not change the long-standing prior precedent that permits the use of hearsay in preliminary proceedings dealing with the admissibility of evidence").

Garcia, 324 Fed. App'x at 708-09.

The defect in this claim is that a criminal defendant does not have an absolute right to enter a Crosby plea.  In fact, the Louisiana Supreme Court expressly held in Crosby:  "As in other instances of a qualified plea of guilty, the trial court has very great and virtually unreviewable discretion to reject rather than accept a guilty plea conditioned upon reservation of appellate review of pre-plea assignments of non-jurisdictional error."  Crosby, 338 So.2d at 590.  In light of that reality, a petitioner claiming that his counsel was ineffective for failing to pursue a Crosby plea faces daunting obstacles.  For example, a petitioner must show that counsel did not in fact pursue the possibility of a Crosby plea – for if counsel pursued the possibility but learned that a Crosby plea would not be accepted, then it cannot be said that he performed deficiently in this respect.  Relatedly, a petitioner must also show that the trial court would in fact have accepted a Crosby plea in his case – for if such a plea would not have been accepted, then counsel's failure to pursue such a plea is of no consequence.  Here, petitioner has made neither of those showings.  Therefore, again, he has not shown that the state court decision denying his claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

Lastly, petitioner claims that his trial counsel was ineffective for allowing him to enter guilty pleas despite a defect in his predicate conviction.  In this claim, petitioner alleges that his plea of guilty to possession with intent to distribute cocaine in Orleans Parish Criminal District Court number 395-843 was invalid because he was not properly advised of his Boykin rights.[22]  He therefore alleges that defense counsel should have challenged the validity of that conviction rather

---

[22] Boykin v. Alabama, 395 U.S. 238 (1969).

than allowing it to be used as the foundation for his guilty pleas to being a felon in possession of a firearm and to being a second offender.

As to petitioner's claim regarding counsel's failure to challenge the predicate conviction's use with respect to the firearm conviction, that claim clearly fails. As explained *supra*, even if there was a basis for attacking the validity of that predicate conviction, that still would not affect the validity of the charge of possession of a firearm by a convicted felon. Until such time as his predicate conviction was in fact invalidated, it was illegal for petitioner to possess a firearm. See, e.g., State v. Fayard, 541 So.2d 832, 833 n.1 (La. 1989) ("[A] prior conviction may be the predicate for a violation of La.R.S. 14:95.1 even if that prior conviction was subject to collateral attack, but not yet vacated, at the time the violation of La.R.S. 14:95.1 occurred."). Because the purported invalidity of the outstanding conviction would not be a valid defense to the charge, counsel was not ineffective for "allowing" petitioner to plead guilty to the charge.

Petitioner's claim regarding counsel's failure to challenge the predicate conviction's use in the habitual offender adjudication requires closer examination. In order for a guilty plea to be constitutionally valid, a criminal defendant must be advised that he has a privilege against compulsory self-incrimination, a right to trial by jury, and a right to confront his accusers. Boykin v. Alabama, 395 U.S. 238 (1969). Moreover, only constitutionally valid predicate convictions may be used to adjudicate a defendant as a multiple offender under Louisiana law, and a defendant is allowed to challenge the validity of a predicate conviction included within a multiple bill of information at a contradictory hearing. La. Rev. Stat. Ann. § 15:529.1(D). If such a hearing is requested, shifting burdens of proof are allocated as follows:

- 23 -

> If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken.  If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea.  If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State.  The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers.  If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.

State v. Shelton, 621 So.2d 769, 779-80 (La. 1993) (footnotes omitted).

Here, as noted, petitioner alleges that he was not properly advised of his Boykin rights when pleading guilty in case number 395-843.  However, for the following reasons, the three documents petitioner produced in support of that claim in no way establish that his predicate conviction was in fact invalid as alleged.

First, he produced a minute entry from case number 395-843.  However, that minute entry states that he *was* advised of his "rights," although it does not specify the rights in question.[23]

Second, he produced a certificate in which Orleans Parish Criminal District Court Court Reporter Darcee Michele Cacibauda states that she was unable to locate the "taped courtroom

---

[23]  State Rec., Vol. III of VII, minute entry dated March 13, 2000 (case number 395-843).

proceedings" of hearing at which the plea was taken.[24]  However, the unavailability of the transcript

neither proves nor disproves anything.[25]

        Third, he produced a decision showing that the Louisiana Fourth Circuit Court of

Appeal vacated the sentence of Kenneth Craft, one of petitioner's co-defendants, whose plea was

---

[24]  State Rec., Vol. III of VII, Certificate of Darcee Michele Cacibauda dated October 12, 2010.

[25]  The Court is aware that petitioner believes that he could prove his claim *if* a transcript from case number 395-843 were now available and that he faults the state for the transcript's unavailability.  While his frustration is understandable, it is not a sufficient basis for relieving him of his burden of proof.  For example, in Walker v. Maggio, 738 F.2d 714 (5th Cir. 1984), a *habeas* petitioner challenged his habitual offender adjudication on the ground that his predicate conviction was invalid for failure to advise him of his Boykin rights.  By the time he brought that claim, the transcript concerning his predicate conviction was unavailable.  The United States Fifth Circuit Court of Appeals nevertheless denied his claim, holding:

> [B]ecause Boykin mandates an affirmative showing on the record that a defendant's guilty plea is intelligently and voluntarily made, the court will "scrutinize with guarded caution those situations ... where the reviewing court cannot ascertain from the trial transcript that the stringent due process requirements imposed by [Boykin] ... have been complied with scrupulously."  LeBlanc v. Henderson, 478 F.2d 481, 483-84 (5th Cir. 1973), cert. denied, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 101 (1974).  However, even where the transcript is completely unavailable, this Court has held that it is still the petitioner's burden in a habeas corpus proceeding to demonstrate facts that establish a constitutional violation, unless the state's failure to find the transcript is so egregious a breach of duty as to relieve the petitioner of this initial burden of proof.  Clayton v. Blackburn, 578 F.2d 117, 120 (5th Cir. 1978).  In determining whether the state violated its duty by not making the transcript available, "all of the facts must be considered, including any delay by the petitioner in seeking relief...."  Id.  In the present case, petitioner did not request a transcript of the 1971 proceedings until 1979.  It cannot be said that the state's failure to locate the transcript after eight years is an egregious breach of its duty.  Accordingly, the petitioner is not relieved of his burden in federal court simply because the transcript of the guilty plea hearing was not available.

Walker, 738 F.2d at 716-17.

entered in that same proceeding.[26]  However, that appellate decision is of no relevance.  Petitioner

was not a party to that appeal.  Moreover, in any event, the Court of Appeal vacated Craft's sentence

because the trial court imposed an improper sentence – not because his conviction was invalid.

Accordingly, petitioner has failed to show that there was in fact a basis on which to

challenge the validity of the predicate conviction.  Without such a showing, there is no basis for a

finding that his counsel was ineffective for failing to pursue such a challenge.[27]

For  all of these reasons, it is clear that petitioner has not demonstrated that the state

court decision rejecting his ineffective assistance of trial counsel claims was contrary to, or involved

an unreasonable application of, clearly established federal law, as determined by the Supreme Court

of the United States.  Accordingly, utilizing the AEDPA's doubly deferential standards of review

applicable to such claims, this Court should likewise deny relief.

Petitioner next claims that his appellate counsel was ineffective for failing to raise

the foregoing ineffective assistance of trial counsel claims on appeal.  That claim likewise has no

merit.  As the state court correctly noted in its decision, it is clear that appellate counsel "is not

---

[26] State v. Craft, No. 2001-KA-2081 (La. App. 4th Cir. Apr. 17, 2002); State Rec., Vol. III of VII.

[27] Moreover, petitioner has also failed to prove that a challenge would have made a difference in this case.  *Even if* counsel had pursued such a challenge and a contradictory hearing was required, petitioner has not shown that the state could not have met its burden of proof at that hearing.  All he has shown is that, in *2010*, *Cacibauda* was unable to locate a copy of the recording from case number 395-843.  However, the court reporter in case number 395-843 was Lana L'Enfant, *not* Cacibauda.  State Rec., Vol. III of VII, minute entry dated March 13, 2000 (case number 395-843).  Further, petitioner's habitual offender proceedings were held on December 4, *2006*.  The fact that Cacibauda could not locate the recording in 2010 in no way proves that the state would have been unable to produce a copy of the transcript at a contradictory hearing *four years earlier* if required to do so.

obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)." West v. Johnson, 92 F.3d 1385, 1396 (5th Cir. 1996). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes, 463 U.S. 745, 751-52 (1983). Far from evidencing ineffectiveness, an appellant counsel's restraint often benefits his client because "a brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions." Id. at 753.

The applicable test to be applied in assessing such a claim is instead whether the issues ignored by appellate counsel were "clearly stronger" than the issues actually presented on appeal. See, e.g., Diaz v. Quarterman, 228 Fed. App'x 417, 427 (5th Cir. 2007); see also Smith v. Robbins, 528 U.S. 259, 288 (2000). On direct appeal in the instant case, appellate counsel raised seven claims. Those claims, as stated in his appellate brief, were as follows:

1. The trial court erred by sentencing Mr. Campbell inconsistently with the sentences agreed upon as part of the plea agreement.

2. The trial court erred by breeching [sic] the plea agreement which provided that sentencing would be deferred until Mr. Campbell had resolved another pending criminal matter so that all of his cases could be handled collectively.

3. The trial court erred by erroneously stating the sentencing provisions applicable to the crimes to which the pleas were entered.

4. The guilty pleas were not knowingly, voluntarily, or intelligently entered because the [sic] were made with an understanding that certain, specified sentences were to be imposed as part of the plea agreement, and with an understanding that he would not be sentenced until another

criminal matter was resolved, and those agreements were not kept.

5.      The guilty pleas were not knowingly, voluntarily, or intelligently entered because the [sic] were made under a misunderstanding regarding the potential possible sentences for the crimes to which the pleas were entered.

6.      Mr. Campbell was denied the effective assistance of counsel as a result of his counsel's failure to object to the fact that the sentences imposed were not those promised as part of the plea bargain.

7.      Mr. Campbell was denied the effective assistance of counsel as a result of his counsel's failure to file a motion for new trial, or to vacate the guilty pleas, on the basis that the terms of the plea agreement were not honored.[28]

The Louisiana Fifth Circuit Court of Appeal found those claims to be without merit,[29] and the Louisiana Supreme Court denied petitioner's related writ application without assigning reasons.[30]

For the reasons noted in the Court of Appeal's opinion on direct appeal, those issues were not strong ones.  Nevertheless, as already explained, that is not the issue – the issue is whether the claims that petitioner now argues *should have been asserted,* i.e. his ineffective assistance of trial counsel claims, were "clearly stronger."  They were not.  As already explained in detail in this opinion, petitioner's claims that his trial counsel was ineffective have no merit.  Because those claims are meritless, they cannot be said to be "clearly stronger" than the claims appellate counsel

---

[28]  State Rec., Vol. I of VII, Appellant's Brief, pp. 4-5.

[29]  State v. Campbell, 15 So.3d 1076 (La. App. 5th Cir. 2009); State Rec., Vol. II of VII.

[30]  State v. Campbell, 27 So.3d 842 (La. 2010); State Rec., Vol. II of VII.

asserted on appeal.  Therefore, petitioner's claim that his appellate counsel was ineffective necessarily fails.

For all of these reasons, it is clear that petitioner has not demonstrated that the state court decision rejecting his ineffective assistance of appellate counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

### C.  Petitioner was Subjected to an Illegal Search and Seizure

Lastly, petitioner claims that he was subjected to an illegal search and seizure in violation of the Fourth Amendment.  However, as the state correctly notes in its response, Fourth Amendment claims generally are not reviewable in a federal *habeas corpus* proceeding.  In Stone v. Powell, 428 U.S. 465 (1976), the United States Supreme Court held:  "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial."  Id. at 494 (footnote omitted); see also Janecka v. Cockrell, 301 F.3d 316, 320 (5th Cir. 2002).  The Stone bar applies even if the state court rulings regarding the Fourth Amendment claims were in fact erroneous.  Swicegood v. Alabama, 577 F.2d 1322, 1324 (5th Cir. 1978).

The United States Fifth Circuit Court of Appeals has interpreted "full and fair" consideration of a Fourth Amendment claim to include the availability of "at least one evidentiary hearing in a trial court and the availability of meaningful appellate review when the facts are in

dispute, and full consideration by an appellate court when the facts are not in dispute." <u>Caver v.</u> <u>Alabama</u>, 577 F.2d 1188, 1191 (5th Cir. 1978) (construing <u>O'Berry v. Wainwright</u>, 546 F.2d 1204, 1213 (5th Cir. 1977)).  The "opportunity" for full and fair litigation exists as long as the state provides the petitioner with processes by which he can obtain full and fair consideration, without regard to whether he actually utilizes those processes.  <u>Caver</u>, 577 F.2d at 1192 ("An 'opportunity for full and fair litigation' means just that:  an opportunity."); <u>see also</u> <u>Janecka</u>, 301 F.3d at 320.

In the instant case, the trial court denied a defense motion to suppress after holding an evidentiary hearing on September 5, 2006.[31]  Petitioner could have appealed that ruling, but he did not – he waived his right to appeal.  Because he was provided an evidentiary hearing on his motion to suppress and because state law provided him with a mechanism for seeking appellate review of the denial of his motion, he may not relitigate the claim in this Court.

## <u>RECOMMENDATION</u>

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Steven Campbell be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

---

[31]  State Rec., Vol. I of VII, transcript of September 5, 2006.

a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[32]

New Orleans, Louisiana, this twenty-seventh day of July, 2015.

*Daniel E. Knowles, III*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[32] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.